UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22819-CIV-SEITZ/DUBÉ

IVIS CARO o/b/o
STEPHANIE CARO,

    Plaintiff,

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) and the Motion for Summary Judgment filed by the Defendant (D.E. #17) pursuant to an Order of Reference entered by the Honorable Patricia A. Seitz, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Stephanie Caro (hereinafter "Caro" or "Plaintiff").

## I. FACTS

The Plaintiff's mother, Ivis Caro (hereinafter "Ms. Caro"), filed an application for Child's Supplemental Security Income benefits on the Plaintiff's behalf on September 26, 2002. (R. 42).[1] This application, which asserted disability as of January 2, 2002, was denied initially and on reconsideration. (R. 26, 32). Following a hearing (R. 231-263), the ALJ issued a decision denying the request for benefits. (R. 13-21).

The Plaintiff testified at the hearing held on September 8, 2005 that she was born on April 10, 1989 and was presently in the eleventh grade. Caro stated that she was home schooled "at the end

---

1 All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

of eighth grade through ninth grade;" was absent 56 days last year and left school early due to her condition "a lot" of times. (R. 240-241, 259, 261). She attended summer school to make up the classes and her grades were average. (R. 248). She also described her pain in the pelvic area as a 10 on a scale of 1 to 10 and it lasted 2 to 3 weeks. (R. 242).

According to the Plaintiff, when she had a painful attack, she was unable to go to class, study from home, visit friends, go to the store, do anything outside in the sun or extracurricular activities. She was only able to stay home in bed watching television. (R. 242-243, 248, 250, 253).

Caro stated that Dr. Joanna Davis was an oncology/hematology specialist and treated her for von Willebrand's disease. Dr. Sinoma was a gynecologist who treated her for endometriosis and had performed a Laparotomy on her in January or February. (R. 244, 255).

The Plaintiff's attorney (hereinafter "Mr. Levy") noted that an operative report dated January 20, 2005 with the diagnosis of chronic pelvic pain and endometriosis, the procedurally diagnostic laparoscopy and laparoscopic appendectomy was submitted at the hearing as part of the medical evidence. (R. 245, 252). Mr. Levy asked Caro what she believed her general health condition to be and she responded: "I honestly think it's extreme." The Plaintiff also testified that she attended a seven day hemophilia camp which tried to unite people with bleeding disorders. (R. 246). She remains in contact with friends from the camp by mail or phone. (R. 247).

Mr. Levy also asked the Plaintiff if she had any problems bruising, to which she answered "yes." Also, she testified that before any dental treatment, she has to take Amicar and Stimate. (R. 250).

According to Caro, she has a normal social life; goes out with her friend Louise; does not have a boyfriend, but does date boys. (R. 248). Additionally, the Plaintiff stated that she dresses

herself and does not need help; she gets along well with others; and does not have problems thinking or a low IQ. (R. 249, 262).

The Plaintiff's mother, Ms. Caro, also testified at the hearing. She stated that Caro began having problems with von Willebrand's disease about three to four years ago; that Ms. Caro is a carrier of the disease and that all three of her children have the same condition. (R. 251, 256, 260). According to Ms. Caro, the Plaintiff has a pineal lesion cyst in her brain. The cyst is on her growing gland so "she gets a lot of headaches" and the doctors are "just keep[ing] an eye on it on a yearly basis." (R. 253). Additionally, Ms. Caro testified that Caro receives Medicaid. (R. 255).

Ms. Caro stated that the Plaintiff is allowed to go out with her friends once per month at night. (R. 257). The reason for this is that she likes "to see where she goes and it's only one time that we allow her because of everything that goes on... It's also the way I think and it's also a way of her condition. I don't want her out there exposed to a lot of things can happen." (R. 258).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. Medical records from Dr. Israel D. Alvarez were submitted for the period of April 15, 1994 through August 17, 2001. (R. 117-134).

On May 2, 2001, Caro was seen by Athena C. Pefkarou, a hematologist/oncologist, who diagnosed her with a possible mild type I von Willebrand. (R. 98-101). Dr. Pefkarou advised the Plaintiff that her heavy menstruating may be partially due to a cyst on one of her ovaries. Additionally, Dr. Pefkarou noted that currently Caro is on contraceptive pills prescribed by her gynecologist and that her menstruations are being well controlled. (R. 98). In reviewing her past medical history, Dr. Pefkarou stated that an MRI revealed a pineal lesion which is being monitored by Dr. Prays, a neurosurgeon, and that Caro's "headaches have been well-controlled and have not

3

required any medication." (R. 99).

On June 28, 2001, the Plaintiff was seen at the Miami Children's Hospital emergency room for abdominal pain and nausea. (R. 102-116). Her final diagnosis was ovarian cyst vs. gastroenteritis and she was given Tylenol PM for the pain. (R. 105).

The Plaintiff was seen by Dr. Joanna Davis, pediatric hematology/oncology, on January 10, 2002, who stated that Caro has Type I von Willebrand's disease and a history of dysfunctional uterine bleeding. (R. 135-141). Dr. Davis instructed Caro to use the Stimate to "correct her clotting profile." (R. 136).

A renal sonogram was taken on December 26, 2002, which revealed normal kidneys in size, shape, position and echotexture; no hydronephrosis, cystic disease or shadowing calculus; and an unremarkable bladder. (R. 160). A pelvic sonogram was taken on the same date which revealed a normal uterus in size, shape, position and echotexture. (R. 161).

The report of a consultative examination performed on December 31, 2002, by Pierre Alix, M.D. lists chief complaints of von Willebrand's disease, dysfunctional uterine bleeding, an ovarian cyst and a pineal cyst. (R. 142). The report indicates that the Plaintiff lives with her mother and two sisters; attends public school in the 8th grade with good academic performance; was alert, awake and well oriented; and was clean and well dressed. (R. 143-144). Examination revealed Caro's abdomen "soft and mildly tender over the left lower quadrant... no abdominal mass... bowel sounds and bowel movements are normal... liver and spleen are not palpable." (R. 144).

Childhood Disability Evaluation forms dated January 13, 2003 and March 7, 2003, found that the Plaintiff had severe impairments, but that they did not meet or equal the listings. (R. 147-152, 153-158). The reports also found that the Plaintiff had less than marked limitations in the domain of

health and physical well-being and no limitations in the five remaining domains. (R. 150-151, 156-157).

Medical records from Dr. Miguel Martinez of Fem Care were submitted covering the period of January 28, 2003 through October 4, 2004. (R. 176-191). These records indicate that a pelvic ultrasound was performed on May 5, 2004 which listed an impression of retroverted uterus and mild amount of fluid within the cul-de-sac. (R. 178, 217). Additionally, a breast ultrasound was performed on December 1, 2003, which revealed no cystic or solid masses. (R. 180).

An operative report from Palmetto General Hospital shows that the Plaintiff had a diagnostic laparoscopy and peritoneal biopsy performed on March 6, 2003. Her preoperative diagnosis was severe dysmenorrhea and hypermenorreah, and her postoperative diagnosis was minimal pelvic endometriosis. (R. 162-165, 210-212). The report indicates that the Plaintiff's uterus was normal in size, shape and position; and both ovaries looked normal. (R. 163).

The Plaintiff was admitted to Miami Children's Hospital on August 30, 2004 and discharged on September 2, 2004 with complaints of dizziness. (R. 166-175). A CT Scan of the brain revealed a "stable pineal cyst" with no intracranial injury. (R. 170).

Medical records from Dr. Emery Salom, gynecologist, were submitted covering the period of March 6, 2003 through July 27, 2005. (R. 196-219). On February 1, 2004, the Plaintiff was seen by Dr. Salom for a post operative check and he noted that she appeared to be in no distress; her abdomen was soft, nondistended and non-tender; and her incision was well healed. (R. 197).

On December 16, 2004, an ultrasound of the pelvic revealed a "normal pelvic." (R. 216).

An operative report from Palmetto General Hospital shows that the Plaintiff had a diagnostic laparoscopy and laparoscopic appendectomy performed on January 20, 2005. Her preoperative

diagnosis was chronic pelvic pain and endometriosis, and her postoperative diagnosis was chronic pelvic pain. (R. 201). The report indicates that the Plaintiff was "thought to have endometriosis." (R. 201).

Medical notes dated January 10, 2005 from Dr. Salom indicates that the Plaintiff was diagnosed with endometriosis when she underwent a laparoscopy in May 2003. Notes further reveal that despite being on Lupron, the Plaintiff continues to have severe pain. Caro stated that her lower abdominal pain and lower back pain are severe enough that she does not go to school. However, taking Vioxx and other nonsteroidals do relieve the pain. (R. 202).

A letter from Dr. Salom dated April 11, 2005, states that Caro has been "prescribed Ovral due to medical necessities because she has a diagnosis of endometriosis and abnormal vaginal bleeding." (R. 219). Dr. Salom examined the Plaintiff on July 27, 2005 for endometriosis and gave the following assessment and plan:

> ... von Willebrand's with a diagnosis of endometriosis. She continues on birth control pills. She is doing very well with no pain at this time. The patient has cycles every 4 months at this time. We will give her a refill for Ovral.

(R. 196).

The Plaintiff's medications are listed as Stimate, Humate P, Amicar and Low Ovral. (R. 220). Additionally, the record contains the Plaintiff's school attendance records showing that she missed 23 days in 7th grade; 28 days in 8th grade; was home schooled in the 9th grade; 33 days in the 10th grade; and 4 days the first month of 11th grade. (R. 221-230).

On July 26, 2005, Dr. Bradley Bradford, a medical expert, completed a set of interrogatories and stated that he is a board certified pediatrician. (R. 192-195). Dr. Bradford stated that he reviewed the medical evidence in this case; and is familiar with the Listing of Impairments

6

promulgated by the Commissioner, with the term "medically determinable impairment," and with the concepts of "meeting" and "functional equivalence" of the Listing of Impairments. (R. 192-194). Further, Dr. Bradford noted the impairments established by the medical records as: von Willebrand's disease Type I, endometriosis, dysmenorrhea, ovarian cyst and pineal cyst. (R. 193).

According to Dr. Bradford, none of the Plaintiff's impairments meet or equal a listing. (R. 193). Additionally, Caro is noted as having no limitation in acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and self care. (R. 194). Caro is noted as having "less than marked" impairments in health and physical well-being. (R. 195).

On December 5, 2005, the ALJ issued a decision finding that the Plaintiff's impairment of Type I von Willebrand's disease was severe, but did not meet or equal a listed impairment. Additionally, the ALJ found that the Plaintiff's impairment of a pineal cyst is not severe. (R. 13-21). The ALJ also found that the Plaintiff had no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects and caring for herself. Marked limitations were found in the domain of health and physical well-being. (R. 19-20). Based on these determinations, the ALJ concluded that the Plaintiff was not disabled, and thus, not eligible for Child Supplemental Security Income benefits. (R. 21).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971);

Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

A person under the age of 18 shall be considered disabled "if that individual has a medically

8

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c (a)(3)(C)(I).

A three-part test is utilized in determining a child's disability. The first step is to determine whether the child is performing substantial gainful activity. 20 C.F.R. §416.924(b). If not, the next inquiry is whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. §416.924(c). If so, the final step is to determine whether the child's impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. §416.924(d).

In order to "functionally equal" the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(d). The six "domains" which are considered in making the determination are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself and (6) health and physical well-being. 20 C.F.R. §416.926a (b)(1)(I)-(vi). See also Shinn v. Commissioner of Social Security, 391 F.3d 1276 (11th Cir. 2004).

A "marked limitation" is defined in the regulations as present if the impairments seriously interfere with the "ability to independently initiate, sustain, or complete activities." This limitation is the equivalent of the functioning that would be expected "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." §416.926a(e)(2)(I). Additionally, if the child is younger than 3 years old, a marked limitation will be found if the child is "functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record."

9

§416.926a(e)(2)(ii). A marked limitation will also be found if a child has a valid score on a comprehensive standardized test designed to measure ability or functioning in a particular domain, that is two standard deviations or more below the mean, but less than three standard deviations and day to day functioning of the child in the domain-related activities is consistent with the score. §416.926a(e)(2)(iii).

The regulations also make special provision for finding that a marked limitation exists in the sixth domain of functioning, "Health and physical well-being" as follows:

> ..if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

§416.926a(e)(2)(iv).

An "extreme" limitation is present when the impairment(s) "interferes very seriously with your ability to independently initiate, sustain, or complete activities." §416.926a(e)(3)(I). The regulations add that an extreme limitation does not necessarily mean a total lack or loss of ability to function, but it is the "equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id. For children under age 3, an extreme limitation will generally be found if the child is functioning at a level of one-half of the chronological age or less if there are no scores from standardized tests in the record. §416.926a(e)(3)(ii). An extreme limitation will also be seen if a child has a valid score that is three standard deviations or

more below the mean on a comprehensive standardized test which was designed to measure ability or functioning in a domain, and the day-to-day functioning in such activities is consistent with the score. §416.926a(e)(3)(iii).

As with "marked" limitations, there is also criteria in determining the presence of an "extreme limitation" in the "Health and physical well-being" category. Under this provision, an extreme limitation will be seen if the child is frequently ill because of the impairment(s) or has frequent exacerbations of the impairment(s) that result in "significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation." The regulation also notes that if the child had episodes of illness or exacerbations of the impairment(s) which would be rated as "extreme," the "impairment(s) should meet or medically equal the requirements of a listing in most cases." §416.926a(e)(3)(iv).

In the present case, the ALJ found that the Plaintiff's impairments did not meet or equal the severity in the listing of impairments; that there were no limitations in five of the domains and only marked limitations in the remaining domain of health and physical well-being. Thus, according to the ALJ, the Plaintiff was not disabled. The Plaintiff contends that the ALJ erred by failing to find that the listings had been met by utilizing a medical expert with a medical specialty of pediatrics rather than a hematologist; and by accepting the medical expert's testimony via interrogatories as opposed to being present at the hearing and being subject to cross-examination.

To show that the listings have been met, the Plaintiff must have a diagnosed condition which is included in the listings and provide objective medical reports which show that the condition meets the specific criteria of the listing and duration requirements. In order to show that a listing has been equaled, the "medical findings must be at least equal in severity and duration to the listed findings."

See, Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). Thus, the burden is on the Plaintiff to show that the impairment either meets or equals a contended listing. Id.

The Plaintiff's counsel argues that at the hearing he "suggested that the von Willebrand's disease met or equaled" 20 C.F.R. pt. 404, subpt. P, app.1, § 107, Hemic and Lymphatic disorders. (D.E. #15, pg. 4). However, this argument is stated in cursory terms with no specific fact as to how Caro meets or equals this listing and therefore, it fails to support the relief requested. In fact, the record in this case shows that no doctor or consultative examiner found that the Plaintiff meets or equals the listing. Accordingly, there is no error present.

The Plaintiff further argues that utilizing a medical expert with a medical specialty of pediatrics rather than a hematologist constitutes error. The Defendant contends that although the Plaintiff was treated for a blood disorder, a pediatric doctor was also an appropriate source to review the medical record in this case given the medical expert's training and specialty with children. This Court notes that Dr. Bradford's opinion is not contrary to the medical evidence. As previously noted, two Childhood Disability Evaluation forms show that the Plaintiff's impairments, although severe, did not meet or equal the listings (R. 147-158). Accordingly, there is no basis for error.

Additionally, the Plaintiff argues that the medical expert was not present at the hearing and not subject to cross-examination. The Plaintiff also argues that the medical expert failed to reply to the question regarding his familiarity with the concept of "equaling" a listing. The Defendant contends that counsel for the Plaintiff did not request the issuance of a subpoena prior to or during the hearing and therefore, waived his right. 20 C.F.R. § 416.1450(d) (2007).

The regulations provide, in pertinent part, as follows:

> Presenting evidence at a hearing before an administrative law judge.
>
> (d) Subpoenas.
>
> (1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.
>
> (2) Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 416.1450(d) (2007).

According to the regulations, the Plaintiff failed to make a proper request for the medical expert to be subpoenaed. Additionally, Dr. Bradford's interrogatories do not contradict any medical evidence which support the Plaintiff's contentions regarding her disability. Accordingly, this Court agrees with the Defendant and finds that there is no basis for error in the asserted failure to subpoena the medical expert and allow the medical expert to be present at the hearing and subject to cross-examination.

The record before this Court contains substantial evidence, as set out in this Report and Recommendation, to support the ALJ's conclusion that the Plaintiff's impairments do not meet or medically equal a listing. Additionally, the determinations made by the ALJ concerning the lack of any limitations in five of the domains and marked limitation in the health and physical well-being

domain are also supported by substantial evidence. Since there were not two domains with "marked limitations" or one domain with an "extreme limitation," the ALJ properly found that the Plaintiff's impairments did not functionally equal a listed impairment. See, §416.926a(d). Accordingly, there is no basis for error.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be AFFIRMED. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #15) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #17) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this ___24___ day of April, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

cc:   Honorable Patricia A. Seitz
      Milton Aponte, AUSA
      Bernard J. Levy, Esq.